## ROSS v. GRAFTON POWER CO. et al.
### No. 120.

District Court, D. Vermont.
July 27, 1932.

See, also, 60 F.(2d) 663.

Carl A. Ross, S. E. Richardson, of St. Johnsbury, Vt., and Irving F. Carpenter, of Boston, Mass., for plaintiff.

David E. Porter, of St. Johnsbury, Vt., for defendant trustee.

Searles & Graves, of St. Johnsbury, Vt., Frederick J. Dunn, of Boston, Mass., and George T. Hughes, of Dover, N. H., for other defendants.

WOOLSEY, District Judge.

I dismiss this complaint with costs on the ground that it does not state a cause of action cognizable in equity.

I. After a full argument which has continued since the noonday recess yesterday on the demurrer in this case, which I am treating as a motion to dismiss, the situation seems to me to boil down to this:

On the 31st day of December, 1910, the plaintiff, having secured certain flowage right easements, hereinafter referred to as Ross rights, from owners of land on the Connecticut river in the vicinity of Fifteen Mile Falls, and having in consideration therefor given certificates of indebtedness in his own name, to which I shall hereinafter refer as Ross certificates, entered into a contract in regard thereto with Chace & Harriman, Inc., a New Jersey corporation, and with Peter Auten, of Princeville, Ill. Annexed to this contract there was a schedule of some Ross rights with the amounts to be ultimately paid for each of them. Other Ross rights were referred to therein.

This contract, after appropriate recitals, among its other terms, provided for the appointment of the Citizens' Savings Bank & Trust Company, of St. Johnsbury, Vt., as trustee for certain purposes thereunder.

II. As a result of the acts of the several parties to this contract the present situation is as follows:

The interest of Chace & Harriman, Inc. therein and the Ross rights in the lower development have become vested in the Grafton Power Company.

The Ross rights in the upper development are still vested in the Citizens' Savings Bank & Trust Company of St. Johnsbury.

Most of the Ross certificates, so far as appears, are either vested in the Grafton-Caledonia Power Company, or the Connecticut River Develpoment Company, although possibly a few of them are vested in other parties.

III. The controversy here admittedly revolves about the rights of the plaintiff and the duties of the assignees of the contract of December 31, 1910, and of the trustee under the provisions of the last part of paragraph 6 thereof, which reads as follows: "It is further provided that in case any of said owners and holders of any of said written obligations on diligent search cannot be found, or cannot be ascertained because of conflicting claimants or pending legal proceedings said trustee may give a deed as aforesaid on receipt of the price as aforesaid, as stakeholder, in which case said second party and its assignee shall indemnify and save harmless both said trustee and said first party from any and all loss, cost, expense and damage, including attorneys fees, occasioned by making such payment, until a proper receipt and discharge is procured, and said second party shall attend to the payment, performance, and discharge as soon thereafter as can reasonably be done."

IV. The contract referred to easements which had been secured on what are called, for convenience, the upper and lower developments. The easements abutting on the lower development were referred to in plat C and schedule C of the contract. This lower development was open and the flowage of water thereon begun on the 1st of October, 1930. It is with the lower development only that I am here concerned. Plat D and schedule D, which are also referred to in the contract, re-

late to what is now called the upper development. But, as the time for the payment of the Ross certificates for this upper development does not expire until October 1, 1932, at which time the receipts referred to in the above quotation from paragraph 6 of the contract have to be filed, it is obvious that this action, which was commenced on December 11, 1930, is premature with regard to the upper development. Consequently I do not deal with that at the present time, for the only basis on which plaintiff could avoid the fact that this suit is prematurely brought in respect of the upper development would be on a sufficient showing in the complaint to entitle him prima facie to a rescission of the contract of December 31, 1910, and that, I am frank to say, I do not think he has made.

█ It is also observable here that this court has not any jurisdiction to declare rights under a contract before a controversy has arisen. So the Ross rights referred to in plat D and schedule D are out of the case.

V. Section 53 of paragraph III of the complaint reads that "plaintiff further avers that under date of September 13, 1930, said trustee asked plaintiff if he wanted anything more than protection and stated said trustee had suggested that said Grafton Power Company give plaintiff a bond of indemnity and on the same date said Grafton Power Company submitted to plaintiff a draft of such a bond, a copy of which marked Plaintiff's Exhibit 'R' is attached and made a part hereof."

Section 54 of Paragraph III of the complaint reads that "and plaintiff in reply under date of September 18, 1930, refused to accept such bond and advised said trustee that plaintiff wanted a discharge of his obligations not protection from a continuation of same."

It seems to me that this frank statement by the plaintiff is extremely illuminating.

In the first place, I hold that Exhibit R annexed to the complaint was an adequate tender of the indemnity bond required by paragraph 6 of the contract; and, in the second place, I do not think that the position which the plaintiff assumes in section 54 of paragraph III of the complaint is a position which he is entitled to assume in view of the provisions for an indemnity agreement in paragraph 6 of the contract.

VI. I have read the complaint many times, for it was sent to me before the argument, and I have now had the great advantage of counsel's elucidation of its allegations.

It seems to me that we have here a plaintiff who is in fear of contingent liabilities of some kind because of some outstanding or floating Ross certificates or claims by the persons who had owned Ross certificates and who may not have assigned them in the proper form.

█ The provision for indemnity in paragraph 6 of the contract was to protect the plaintiff from just such contingent liabilities, and, in asking for a discharge of such obligations instead of a protection from them, as he does in section 54 of paragraph III of his complaint, he is asking for something outside of the contract, and consequently, as the contract is the sole basis of the relation between the parties, something to which he is not entitled.

If the defendants had refused to give an indemnity agreement to the plaintiff, we should have another situation presented; but here it is alleged that the defendants have offered an indemnity agreement which I have found adequately met the provisions of paragraph 6 of the contract.

We have here a case, therefore, where the complaint fails to show a breach of duty of any kind on the part of the defendants, and there cannot be any foundation laid for the maintenance of any suit in equity unless a breach of some duty on the part of the parties defendant is shown.

VII. Section 70 of paragraph III of the complaint reads as follows: "Plaintiff further admits that the said defendants when they made entry on the lands and rights of the plaintiff, under Schedule 'C' and Plat 'C,' covering the first development did so with the approval and consent of this plaintiff, and that they made the aforesaid improvements with the like approval and consent of this plaintiff and plaintiff disclaims any right to interfere with the possession of the said defendants of the lands and easements necessary to the operation of the said lower development so constructed."

When we read this allegation in connection with sections 53 and 54 of paragraph III of the complaint, it becomes still more obvious that there is not, at present, any real controversy between the parties in the proper meaning of that word.

VIII. Summarizing the situation, therefore, the complaint, without setting forth any controversy between the parties and without showing that the defendants have breached any duty owing by them to the plaintiff under the contract of December 31, 1910, merely

sets forth a desire for an accounting, and, of course, without a breach of duty of some kind on the part of the defendants, the right to an accounting cannot be maintained.

It seems to me, therefore, that the result is inescapable that the complaint should be dismissed, with costs for want of equity, and I shall enter a decree accordingly.